# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Criminal Action Number** |
| | ) | **11-00150-01-CR-W-HFS** |
| **Verne E. Moore,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS (Doc. #19) filed on December 29, 2011, by defendant Verne E. Moore ("Moore"). On June 20, 2012, the undersigned held an evidentiary hearing on Moore's motion. Moore was present and represented by his counsel, Federal Public Defender Robert Kuchar. The government was represented by Assistant United States Attorney Michael Green. At the evidentiary hearing, three witnesses testified: Moore himself and two officers with the Kansas City, Missouri Police Department, Jason Quint and Matthew Payne. Additionally, one exhibit was admitted into evidence: Plaintiff's Exhibit 1 (a dashboard camera videotape).

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

**PROPOSED FINDINGS OF FACT[1]**

1. On March 21, 2011, Officers Jason Quint and Matthew Payne of the Kansas City, Missouri Police Department ("KCPD") were patrolling an area of Kansas City near 33rd Street and Park Street. Tr. at 9-10, 42-43.

2. The area being patrolled was considered by KCPD to be a high crime neighborhood. Tr. at 11, 26.

3. The area was being patrolled on March 21, 2011, in particular, because a recent homicide had occurred in the area and KCPD was "saturating" the neighborhood. Tr. at 11-12, 27-29.

4. At approximately 12:55 p.m. on March 21, 2011, Officers Quint and Payne observed two males walking southbound on Park Street. Tr. at 12, 43.

5. The two males were walking down the middle of the street despite the fact that Park Street had sidewalks. Tr. at 13-18, 43, 46-47, 53; Pl. Ex. 1.

6. Officers Quint and Payne were aware of the Kansas City jaywalking ordinance that declares it a violation of law to walk down the middle of the street where sidewalks are otherwise available. Tr. at 13, 43.

7. Based on the observed violation of law as well as the seeming youth of one of the two males,[2] the officers approached the pair. Tr. at 14, 40.

---

[1] To the largest extent possible, the Court has endeavored to limit its findings to only those factual and legal matters necessary to the proposed recommendation, leaving aside other collateral and/or moot issues. As a result, the focus of these facts is primarily concerned with whether the officers in question observed Moore violating a state statute and municipal ordinance. In making findings of fact on that issue, the Court, at times, was required to resolve discrepancies between the testimony of witnesses, in particular the contrast between the two officers on one side and Moore on the other side. In making such credibility decisions, the Court took into account (1) the demeanor of the witnesses on the stand; (2) the interest the witnesses had in the outcome of the trial; (3) the opportunity of the witnesses to hear, observe, and recall what was said or done; and (4) any conflicts within a given witness' testimony. However, the Court has not undertaken to catalog in this order every credibility finding and the failure to specifically mention any particular testimony or documentary evidence herein is an indication that the Court did not find such evidence to be persuasive and/or credible. In general, the Court concluded that the testimony of Officers Quint and Payne (as bolstered by the dashboard camera videotape) was, in large measure, more credible than the testimony of Moore.

[2] The incident occurred midday on a Monday and the officers were concerned that the younger male should be in school. Tr. at 14-15.

2

8. The officers learned that the younger male was, in fact, a juvenile, while the older male was Moore. Tr. at 20-21.

9. Due to the high crime area and the recent homicide, the officers determined to frisk both males for weapons before further questioning them out of concerns for officer safety. Tr. at 22, 48, 56.

10. In frisking Moore, Officer Payne felt what he believed to be a gun in Moore's right front pants pocket. Tr. at 23, 48-49.

11. Thereupon, Officer Payne handcuffed Moore and recovered a firearm from Moore's right front pants pocket. Tr. at 23, 49, 57.

12. At the time Officer Payne recovered the firearm from Moore, it was cocked and loaded with eight rounds of ammunition, including one in the chamber. Tr. at 23, 49-50.

13. The officers then learned over their radios that Moore was a convicted felon and placed him under arrest as a felon in possession of a firearm. Tr. at 23-24.

## PROPOSED CONCLUSIONS OF LAW

A police officer may stop and briefly question a person if the officer has a reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968). When a person commits a crime in the presence of an officer, such conduct gives the officer probable cause – a higher standard than reasonable, articulable suspicion – to seize the person. *See*, *e.g.*, *United States v. Lewis*, 183 F.3d 791, 794 (8th Cir.1999) (describing the rule as "well-established"). In this case, the officers observed Moore walking in the middle of the street, despite the availability of sidewalks. In that regard, Missouri law provides:

> Where sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.

MO. REV. STAT. § 300.405(1). Similarly, Kansas City itself has decreed:

> Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.

KANSAS CITY, MO. CODE OF ORDINANCES § 70-786(a).

3

During the hearing, Moore questioned the officers as to the likelihood that they would have actually arrested Moore for walking down the middle of the street. Such considerations are irrelevant in this case insofar as the stop of Moore is considered under *Terry*. As recently noted by the Eighth Circuit in another case:

> [T]he officers actually witnessed [the defendant] riding a bicycle without a light, which is more than sufficient to establish reasonable, articulable suspicion of criminal activity. Although we acknowledge that an officer may have probable cause to arrest when a person commits a crime in his presence . . ., we need not decide that the officers here had probable cause. Because the officers saw [the defendant] violating the bicycle-equipment statute, they had, at the very least, the authority to stop him to advise him of the violation. Accordingly, we conclude that the officers lawfully stopped [the defendant] in accordance with *Terry*.

*United States v. Banks*, 553 F.3d 1101, 1104 (8th Cir. 2009).

In conducting a *Terry* stop, "'[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a pat down search 'to determine whether the person is in fact carrying a weapon.'" *Minnesota v. Dickerson*, 508 U.S. 366 373, 113 S. Ct. 2130, 2136 (1993) (*quoting, in part, Terry*, 392 U.S. at 24, 88 S. Ct. at 1881). In determining whether the frisk was justified, a court must look to the totality of the circumstances. *United States v. Hanlon*, 401 F.3d 926, 929 (8th Cir.2005). In this case, the officers seem to justify a weapons pat-down pursuant to *Terry* primarily based on the fact that Moore was seen in a high crime area. Standing alone, this may not be sufficient to support a frisk for weapons during a *Terry* stop. *Compare Sibron v. New York*, 392 U.S. 40, 64, 88 S. Ct. 1889, 1903 (1968) ("In the case of the self-protective search for weapons, [the officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.").

4

The Court concludes that it need not reach this issue, however, because the officers in this case had probable cause to arrest Moore based on his observed violation of state law and a municipal ordinance. It is, of course, axiomatic that if an officer has arrested an individual, the officer may search the individual's person incident to that arrest and may reach into his pockets. *United States v. Robinson*, 414 U.S. 218, 226, 236, 94 S.Ct. 467, 472 (1973). In discussing the dichotomy between a "stop" and an "arrest," the Eighth Circuit has noted that both situations involve seizures of an individual but that "a seizure of a person predicated upon probable cause is properly regarded as an arrest." *United States v. Pratt*, 355 F.3d 1119, 1123 (8th Cir. 2004). *Pratt* is instructive.

In *Pratt*, the officers observed the defendant – in Kansas City – walking in the middle of a street notwithstanding the availability of sidewalks. The officers determined to perform a "pedestrian check" on the defendant. *Id*. at 1120. For officer safety concerns, the defendant was handcuffed and patted down for weapons, though the officers did not consider him under arrest at that time. *Id*. at 1121. The pat-down revealed that the defendant had illegal contraband on his person. The defendant challenged the constitutionality of the frisk, arguing that the officers lacked articulable facts to support a weapons search under *Terry*.

The *Pratt* court concluded that the search was a valid search incident to an arrest. The court's conclusion was based on two facts:

> (1) "The officers had probable cause to arrest [the defendant] before they approached him [having] observed [him] violating state and local law," and
>
> (2) Because the officers had probable cause to arrest the defendant, *Terry* was inapplicable. Thus, the defendant "was therefore arrested if he was seized, and in this case [the defendant] was seized when he was physically restrained by the officers."

5

*Id.* at 1123-24. The officers' beliefs about whether they intended to arrest the defendant were irrelevant.

> Although the officers testified that they did not believe they had arrested [the defendant] when they physically restrained him, this fact does not change the outcome. An officer's uncommunicated subjective intent is irrelevant to the question of whether an individual has been seized. [W]hen probable cause to arrest exists, the standard for determining whether an arrest has occurred is the same as that for determining whether a seizure has occurred. Because [the defendant] was arrested, the question becomes whether the subsequent search of his person was reasonable under the Fourth Amendment. The search of an arrestee's person has long been upheld as reasonable under the Fourth Amendment, and we see no reason to depart from this notion here.

*Id.* at 1124.

The reasoning of the *Pratt* court applies with equal force to the facts presented herein. As such, the Court concludes that the search of Moore was a proper search incident to an arrest.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS (Doc. #19) filed December 29, 2011.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                        */s/ John T. Maughmer*
                                        **John T. Maughmer**
                                      **United States Magistrate Judge**